UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHARON D. WYCHE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 06 C 2547 |
| v. | ) |
| | ) Judge George M. Marovich |
| ILLINOIS DEPARTMENT OF | ) |
| HUMAN SERVICES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sharon D. Wyche ("Wyche") filed a complaint in which she alleged that defendant the Illinois Department of Human Services ("IDHS") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., by failing to provide a reasonable accommodation, by terminating her employment, by harassing her and by retaliating against her for filing a charge of discrimination. Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.    Background**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces the rule strictly. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are submitted but do not conform with the rule are not considered by the Court. For example, facts not included in a party's Statement of Material Facts or in a party's Statement of Additional Facts are not considered by the Court because to do so would rob the other party of the opportunity to show such facts are disputed. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Finally, where one party supports a fact with admissible evidence and the other party denies the fact without the support of admissible evidence, the fact is deemed admitted.

Wyche began working for IDHS on November 4, 1998. At IDHS, Wyche was supervised by Debra Baker-Dade ("Dade"), who supervised a number of employees that performed the type of work Wyche performed. The local IDHS office where both Dade and Wyche worked was run by Janet Hampton ("Hampton"), who was assisted by Patricia Lambert ("Lambert").

Wyche's job was to process food stamp applications and to make determinations with respect to medical and cash assistance. By all accounts, Wyche performed her duties well, but her attendance was not stellar.

Wyche did not have a particularly easy life. From 2000 to 2005, Wyche dated a co-worker who physically abused her. Wyche abused alcohol, and she used marijuana approximately once per week. Wyche sometimes used cocaine. Wyche often drank before coming to work in the morning. Dade estimated that Wyche was under the influence of alcohol at work approximately 65% of the time. Dade did not, however, discipline Wyche for being under the influence of alcohol at work because it did not affect Wyche's ability to perform her duties. In fact, Dade once told Wyche that she was one of Dade's best workers.

Wyche testified that during the years 2002, 2003 and 2004, she "had trouble sleeping." She testified, "I didn't want to get up. It was very hard for me to get up. I was–didn't–I wasn't feeling well enough to get up and I was overwhelmed with thinking about the day ahead of me." Wyche also testified that she informed her doctors that she had nightmares.

In early 2003, Wyche attempted suicide. According to Wyche's undisputed testimony (none of her medical records are in the record), a doctor diagnosed Wyche with depression and prescribed two anti-depressants, Lexapro and Doxepin. Doxepin also helps one to sleep. It is not clear from the record how long Wyche continued to take Lexapro and Doxepin. The medication made Wyche sleepy. Sometimes, Wyche used alcohol to stay awake.

Despite performing her job duties well, Wyche had problems with attendance. In each of Wyche's performance reviews between 1999 and 2004, Wyche's supervisors criticized her for using her leave time unwisely. At various times, Wyche was given verbal warnings about her attendance and tardiness.

All IDHS employees were allowed a certain amount of paid time off, which IDHS calls available benefit time. For example, each employee accrued one sick day on the first of each month. Each employee accrues three personal business days at the start of each year. Wyche, based on her seniority, earned 1.5 vacation days on the 16th day of each month. If an employee becomes sick after exhausting all of his or her available benefit time, he or she is given up to five additional excused absence days.

As part of a collective bargaining agreement between IDHS and the AFSCME union (of which Wyche was a member), IDHS enforced an "Affirmative Attendance Policy." The policy set out, among other things, the consequences to employees of their unauthorized absences. The IDHS classified unauthorized absences in one of two ways, depending on whether the employee called in to inform his or her supervisor of his or her absence. If the employee failed to call the supervisor, the IDHS classified the absence "XA." If the employee called the supervisor about the unauthorized absence, the IDHS classified the absence "UA." The Affirmative Attendance Policy allowed the IDHS to discharge an employee who, within any 24-month period, accumulated six XA's, i.e., the unauthorized absences for which he or she did not call his or her supervisor. The policy also allowed the IDHS to discharge an employee who, within any 24-month period, accumulated eleven UA's, i.e., the unauthorized absences for which he or she called his or her supervisor, or a combination of UA's and XA's.

During the year 2003, IDHS granted Wyche three leaves of absence. It is undisputed that the leaves were granted pursuant to the Family and Medical Leave Act, but it is not clear from the record whether the leaves were due to Wyche's depression or some other condition. The first leave extended from March 5, 2003 to April 7, 2003. The second leave was from June 24, 2003 to July 3, 2003, and the final leave was from August 19, 2003 to September 16, 2003.

In addition to the leaves of absence, the IDHS agreed at some point (and the timing is not included in the record) to give Wyche some leeway with respect to her arrival time. Wyche's normal hours were 8:30 to 5:00. IDHS agreed that so long as Wyche arrived to work by 9:30 a.m., she would not lose vacation or sick time for the time she was late.

Apart from the FMLA time off, Wyche accrued several unauthorized absences. In May 2003, Wyche accrued six UA's. In June 2003, Wyche accrued two more UA's. After a pre-disciplinary hearing, Wyche was punished with a ten-day paper suspension (called a "paper" suspension because the employee continues to be paid and is still required to report to work and perform his or her duties).

On January 29, 2004, Wyche asked and was approved to use three hours of personal time to attend a court-related matter on January 30, 2004. That day, she called to ask to use vacation time to take the remainder of the day off. Wyche was out of vacation time. On April 9, 2004, Wyche was issued a 15-day paper suspension for being absent without available leave time on January 30, 2004.

During February and March 2004, Wyche was absent from work due to sickness five times. Because Wyche was out of available sick time but provided medical documentation for her absences, IDHS coded those days as five excused absences.

On August 11, 2004 Wyche called her supervisor after 9:30 a.m. to say that she was sick. Because Wyche reached her supervisor after 9:30 a.m., she was allowed to use sick time for the

period of time after the call, but was not allowed to use sick time for the period of time she was supposed to be at work before she called her supervisor. The time before her call was coded XA (unauthorized absence without a call in). Wyche was given a seven-day paper suspension for this, her tenth unauthorized absence within a 24-month time period.

In August 2004, Wyche asked whether she could take time off around Labor Day to visit her father in Florida. Wyche's supervisor approved Wyche's request. Unfortunately, and unbeknownst to Wyche's supervisor, Wyche did not have any remaining available benefit time. The fact that Wyche had no remaining available benefit time became known only after Wyche had taken the time off, due to the workings of the computer system which tracks employee time off at the IDHS. On September 27, 2004, IDHS informed Wyche that it had scheduled a pre-disciplinary hearing for her.

Two days later, on September 29, 2004, Wyche filed with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination. In the charge, Wyche asserted that she had been harassed by Hampton because of her depression.

On November 17, 2004, Wyche was suspended pending discharge. Wyche was discharged on November 30, 2004.

On December 2, 2004, Wyche filed with the IDHR and the EEOC a second charge of discrimination.

## II. **Summary Judgment Standards**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the

evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

### III.  Discussion

In her complaint, Wyche asserts that the IDHS violated the ADA in four ways. Wyche alleges that the IDHS failed to provide a reasonable accommodation and discharged her because of her alleged disability. Wyche also asserts that the IDHS subjected her to a hostile work environment due to her alleged disability. Finally, Wyche asserts that the IDHS discharged her in retaliation for her having filed a charge of discrimination.

#### A.  Wyche's failure to accommodate and disparate treatment claims

The Americans with Disabilities Act makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Included in the definition of discrimination under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of

the business of such covered entity." 42 U.S.C. § 12112(5)(A). In order to prevail on her failure to accommodate claim, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to provide a reasonable accommodation. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). With respect to the third element, the ADA requires the individual and the employer to engage in an interactive process to determine a reasonable accommodation, and the employer is liable under the ADA only if it is responsible for the breakdown in the interactive process. *Sears, Roebuck*, 417 F.3d at 797.

In order to prevail on either her claim for disparate treatment or for failure to provide a reasonable accommodation, Smith must first establish that she has a disability within the meaning of the ADA. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or as "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C). Major life activities are "those activities that are of central importance to daily life." *Toyota Motor Mfg. Ky, Inc. v. Williams*, 534 U.S. 184, 196 (2002).

Substantially in the phrase "substantially limits" means "considerable" or "to a large degree." *Toyota*, 534 U.S. at 196. The plaintiff's impairment–in its corrected state–must be so limiting, relative to someone in the general population. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-489 (1999); *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002). The standard for qualifying as disabled is "demanding," and the terms in the definition of disability "need to be interpreted strictly." *Toyota*, 534 U.S. at 197. To establish that she has a disability, plaintiff must offer "evidence that the extent of the limitation [caused by her impairment] in terms of

[her] own experience . . . is substantial." *Toyota*, 534 U.S. 198 (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)).  The "impairment's impact must be permanent or long term." *Toyota*, 534 U.S. at 198.  Finally, a plaintiff must put forth evidence that she is so limited as of the time of the alleged discrimination, i.e., as of the time of the alleged failure to accommodate or the alleged disparate treatment.  *See Burnett v. LFW* Inc., 472 F.3d 471, 483 (7th Cir. 2006).

In this case, Smith argues that she suffers the mental impairment of depression and that it substantially limits her in the major life activity of sleeping.  The Seventh Circuit has concluded that sleep is a major life activity for purposes of the ADA.  *See Squibb v. Memorial Medical Ctr.*, 497 F.3d 775, 784 (7th Cir. 2007).  In order to establish a substantial limitation in the major life activity of sleeping, one must put forth evidence that the limitations are "prolonged, severe and long-term." *Squibb*, 497 F.3d at 784 (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 757 (7th Cir. 2006)).  In *Squibb*, the plaintiff testified that she was unable to sleep longer than three to four hours per night.  The Seventh Circuit affirmed summary judgment for the defendant, stating:

> [Plaintiff's] generalized assertions that she is unable to sleep for substantial periods of time, unsupported by any additional evidence, medical or otherwise, and unenhanced by claims that this lack of sleep affects her daytime functions, are insufficient to create a genuine issue of fact on her claim that she is disabled because of the limitations on her ability to sleep.

*Squibb*, 497 F.3d at 784; *see also Scheerer v. Potter*, 443 F.3d 916, 920-921 (7th Cir. 2006) ("[Plaintiff's] evidence on sleeping difficulties establishes, at most, intermittent disrupted sleep, but it cannot establish the type of prolonged, severe and long-term sleep difficulties that can amount to a substantial limitation in the major life activity of sleeping."); *Zeiger v. Illinois*

*Dept's of Corrections*, Case No. 05-3228, 2008 WL 695366 at *3 (C.D. Ill. March 12, 2008) (granting summary judgment to defendant where "essential details such as how much [plaintiff] slept each night and how the lack of sleep affected his daytime functions are not included. [Plaintiff's] own statements regarding sleep, consisting mainly of a self-diagnosis of insomnia based on problems falling asleep, provide few elucidating details. Such generalized claims, lacking in both medical support and specificity, fall far short of establishing 'prolonged, severe and long-term' limitations on sleeping."); *Storey v. City of Chi.*, Case No. 04 C 7352, 2007 WL 773248 at *6-7 (N.D. Ill. March 12, 2007) (defendant entitled to summary judgment because plaintiff's "own deposition testimony that she had trouble sleeping at night" was insufficient to establish a substantial limitation on the major life activity of sleeping).

Wyche has failed to put forth sufficient evidence from which a reasonable jury could conclude that she has a disability within the meaning of the ADA. Although Wyche has put forth undisputed evidence (namely, her testimony) that she was diagnosed with depression, she has failed to show that depression substantially limited her in the major life activity of sleeping. Wyche has testified that during the years 2002, 2003 and 2004, she "had trouble sleeping." She testified that she told her doctors she had nightmares. After she attempted suicide, a doctor prescribed her two anti-depressants, one of which has the effect of helping her to sleep. A vague statement that one had "trouble sleeping" even in combination with her testimony that she was prescribed a drug to help her sleep is not sufficient to show a substantial limitation in the major life activity of sleeping. Missing from the record is any evidence as to how much Wyche was able to sleep each night during the relevant time period. Missing from the record is any evidence as to whether the medications corrected her sleeping problem. Wyche has failed to put forth

sufficient evidence from which a reasonable jury could conclude that she was substantially limited in the major life activity of sleeping.

Because Wyche cannot show that she has a disability within the meaning of the ADA, her claims for disparate treatment and for failure to provide a reasonable accommodation fail as a matter of law. Defendant is entitled to summary judgment with respect to her claim that defendant discharged her on the basis of her alleged disability and her claim that defendant failed to provide a reasonable accommodation.

### B.  Wyche's hostile environment claim

Next, Wyche asserts that she was subjected to a hostile work environment due to her alleged disability. The Seventh Circuit has assumed without deciding (because it has been able to decide such claims on other grounds) that a hostile work environment claim is cognizable under the Rehabilitation Act and the ADA. *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005). It has also assumed "that the standards for proving such a claim would mirror those we have established for claims of hostile work environment under Title VII." *Mannie*, 394 F.3d at 982. To survive summary judgment on a hostile environment claim, a plaintiff must put forth sufficient evidence to show: (1) she was subject to unwelcome harassment; (2) based on her membership in a protected class; (3) that the harassment was severe or pervasive so as to alter the conditions of employment and create an abusive work environment; and (4) a basis for employer liability. *Williams v. Waste Mgt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004).

Wyche's claim, again, fails because she fails to meet the second element. One cannot be subjected to unwelcome harassment based on her membership in a protected class if she is not, in fact, a member of that protected class. *See Holman v. Revere Electric Supply Co.*, Case No. 02 C

6351, 2005 WL 638085 at *10 (N.D. Ill. March 15, 2005), *aff'd* 154 Fed. Appx. 501 (7th Cir. 2005). The Court has already concluded that Wyche has failed to put forth sufficient evidence to create an issue of fact on the issue of disability. For this reason, she cannot survive summary judgment on her hostile environment claim.

### C. Wyche's retaliation claim

Unlike Wyche's other claims, a claim for retaliation does not require membership in a protected class. Wyche may support her retaliation claim using either the direct or indirect method of proof. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008).

To establish retaliation using the direct method, Wyche must put forth evidence that she engaged in statutorily protected conduct, that she was subjected to an adverse employment action and a causal connection between the two. *Gates*, 513 F.3d at 686. Evidence of a causal link is evidence that the "protected conduct was a substantial or motivating factor in the employer's decision." *Gates*, 513 F.3d at 686. In *Gates*, the Seventh Circuit found no direct evidence of a causal connection because nothing in the record suggested that the defendant was motivated by anything other than business judgment. *Id.* Similarly, in *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005), the Seventh Circuit affirmed summary judgment for the defendant where no record evidence suggested that plaintiff's supervisors viewed her EEOC charge negatively or that it caused them to take an adverse employment action against her.

Here, Wyche fails to put forth sufficient evidence from which a reasonable jury could conclude that she was retaliated against. Although Wyche has shown that she filed a charge of discrimination about two months before her discharge, she has failed to put forth any evidence (aside from the timing) of a causal connection. The fact that the IDHS notified Wyche *before*

she filed a charge that it was holding a pre-disciplinary hearing with respect to her absences negates any suspicion with respect to the timing of the discharge. Wyche has put forth no evidence that the charge of discrimination was a motivating factor in her employer's decision. There is no evidence that Wyche's supervisors reacted negatively to the charge of discrimination. Rather, the evidence shows that Wyche had eleven absences coded XA or UA within 24 months, and that the employer's policy called for a discharge in such circumstances.

Because Wyche has not put forth sufficient direct evidence of retaliation to withstand summary judgment, the Court considers whether she can proceed based on indirect evidence of retaliation. To make out a *prima facie* case of retaliation, Wyche must demonstrate, "that after engaging in protected activity such as filing a charge, she was subjected to an adverse employment action even though she was performing her job satisfactorily, and no similarly situated employee who did not file a charge was subjected to the adverse employment action." *Mannie v. Potter*, 394 F.3d at 984.

Here, Wyche has put forth evidence that she was discharged after filing a charge of discrimination. Wyche fails, however, to put forth admissible evidence that no similarly-situated individual who did not file a charge of discrimination was discharged. What Wyche puts forth is an affidavit by her attorney, in which affidavit the attorney avers that he has reviewed the evidence and concluded that similarly-situated employees were treated more favorably. IDHS rightly objects to the affidavit. The affidavit is not admissible, because the attorney lacks personal knowledge and because he has not been qualified as an expert witness (not to mention the fact that this is not a subject on which scientific, technical or specialized knowledge would assist). *See* Federal Rules of Evidence 602, 702. Wyche should have put forth the evidence on

which her attorney based his conclusions. But she did not. Evidence of similarly-situated individuals is an essential element of her *prima facie* case, and, without it, IDHS is entitled to judgment as a matter of law on Wyche's retaliation claim.

Accordingly, the Court grants defendant IDHS's motion for summary judgment in its entirety.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

ENTER:

George M. Marovich
United States District Judge

DATED: June 3, 2008